## BIRD ET AL V. JONES ET AL.

1. WITNESSES: *Competency, under Constitution of 1874.*
   In actions by the widow and heirs of an intestate for property descended from him, the defendant is not precluded by the Constitution of 1874 from testifying to transactions with and statements of said intestate in relation to the matter in controversy.

2. TAX SALES: *Assignment of certificate of purchase; effect of; erasing.*
   The assignment of the certificate of purchase of lands purchased at a tax sale, vests in the assignee all the right and title acquired by the purchaser in the land; and the purchaser cannot divest the assignee or his heirs, of the title, by fraudulently procuring the certificate from the widow of the assignee, and erasing the assignment, and thereupon obtaining a deed to himself. Equity will not permit him, or one not an innocent purchaser, holding under him, to keep title so obtained.

3. ASSIGNMENT OF CERTIFICATE: *Impeachment of; burden of proof.*
   Where the assignor of a certificate of purchase of tax lands denies that the assignment was for value, and asserts that it was for another purpose than to transfer the title to the assignee, he must prove it.

4. BONA FIDE PURCHASER: *Donee in deed of gift, is not; notice; forgery.*
   The holder of title by deed of gift from one who has obtained the title by fraud, is not a *bona fide* purchaser for valuable consideration. Nor is one who has been informed, before purchasing the land, that the vendor had already conveyed it to another. Nor one who purchases from the fraudulent holder of the legal title, while the rightful owner is in actual possession. Nor one who obtains title from a vendor who has obtained his title by forgery.

APPEAL from *Lonoke* Circuit Court in Chancery, Hon. C. B. MOORE, Special Judge.

*S. P. Hughes*, for appellant:

Mrs. Simmons was not an innocent purchaser for value. Bird died in possession, and his family, since his death, continued in possession of the land. The purchaser of land in possession of a third party, takes it subject to all the equities between the vendor and the party in possession. 31 *Ark.*, 85; 30 *Ark.*, 417; 29 *Ark.*, 563.

Jones' testimony as to transactions and conversations with Nathan Bird, was clearly inadmissible. *Sec. 2 of the Schedule to the Constitution of 1874.*

Bird had the legal title at the time of his death, by reason of his possession, and the assignment upon the certificates, and no erasure or cancellation could divest it, and reinvest it in Jones. *Taliaferro* v. *Ralton*, 34 *Ark.*, 503; *Strawn* v. *Norris*, 21 *Ark.*, 80; *Neal* v. *Speigle*, 33 *Ark.*, 63; 3 *Washb. on Real Prop.*, 301–2, 271, 274, 275, *and cases cited in n. 3, to p. 275.*

The cancellation was a forgery, and neither Jones nor his assignee could take any benefit from it. *Lewis* v. *Payne*, 8 *Cowen*, 71; *Withers* v. *Atkins*, 1 *Watts.*, 237; *Menning* v. *Smith*, 2 *Barbour Ch'y.*; *Herrick* v. *Maulin*, 22 *Wendell*, 388, *Ct. of Errors; People* v. *Muzzy*, 1 *Denio.*, 240, 243; *Briggs* v. *Glenn*, 7 *Mo.*, 572, 575; *Hatch* v. *Hatch*, 9 *Mass.*, 307; *Barrett* v. *Thorndike*, 1 *Giff.*, 73; *Bliss* v. *McIntyre*, 18 *Vt.*, 466.

A subsequent alteration of a deed does not affect the title. 11 *M. & W.*, 778, 800, in case *Davidson* v. *Cooper*, affirmed on error. 13 *Id.*, 343.

*Clark & Williams*, for appellees:

Jones' evidence was competent. *Wassell* v. *Armstrong*, 35 *Ark.*, 247, 274 ; 1 *Greenleaf*, sec. 426.

On a mere preponderance of testimony this court will affirm. *Branch* v. *Mitchell*, 24 *Ark.*, 432.

ENGLISH, C. J. I. The first question presented for decision in this case is, whether so much of the deposition of the appellee, William N. Jones, as relates to a transaction with, and statements of Nathan Bird, deceased, under whom appellants claim the lands in controversy, was competent evidence. The facts on which this question arises are substantially as follows :

Nathan Bird died intestate, in Lonoke county, eleventh August, 1873, leaving him surviving, Eliza, his wife, four adult children—Philip M., John H., Victoria and Alvorado E. (intermarried with John M. Barnett), and two minor children—Charles and Pauline. There was no administration upon his estate, and no guardians appointed for the two minors. The widow and heirs of Nathan Bird were the complainants in the bill, Mrs. Bird suing in her own right, as widow, and the two minors suing by her, as their next friend.

William N. Jones, his sister, Bettie Simmons, and her husband, Reuben Simmons, were made defendants.

The suit was commenced on the Chancery side of the Lonoke Circuit Court, second October, 1875 ; and the bill alleges that at a tax sale of delinquent lands, made by the collector of Pulaski county, on the twenty-ninth March, 1871, William N. Jones purchased the west half of the northeast quarter of section 36, T. 1, S. R. 9 W., 80 acres, for $10.13 ; and part of the west half of the southeast quarter, of the same section, 40 acres, for $8.62 (the lands then

being in Pulaski; but afterwards, by change of boundary, in Lonoke county), and received a certificate of purchase for each tract.    That on the eighteenth April, 1873, he assigned and delivered the two certificates of purchase to Nathan Bird, for value received, and they continued in his possession to the time of his death.

That soon after the death of Bird, Jones, by deceitful and fraudulent representations, induced Mrs. Bird to deliver the certificates to him, promising to return them to her; and so obtaining possession of them, he criminally erased the assignments written upon them, procured the clerk of Pulaski county to execute to him tax deeds for the lands, upon the certificates, and afterwards made a pretended conveyance of them to his sister, Mrs. Simmons.

In support of his answer to the bill, Jones was permitted to make the following statement, in substance and effect, against the objection of complainants :

"Early in the spring of 1873, Nathan Bird was going to Little Rock, and came by where I was living, and wanted to know if I was going up to pay my taxes on the land in controversy and the land in section 25.    I told him I was busy, and if he would pay my taxes for me, I would send the money by him, and he told me he would pay them for me.    I gave him the money, and  on his  coming back from Little  Rock he gave me a tax receipt for the land in section 25, and said the other, being the land in controversy, had been redeemed. In a few days after this, he came to my house and asked me to let him get my redemption money back; he said I would have to get a lawyer, and as he was owing me money, I had as well get him as any one; that he could pay me part of what he was owing me in that way.    I gave him the certificates of purchase of the land in controversy, and he kept them about three months, and had gone up to Little Rock three times, as he said, and tried to get the redemption

money back for me on the land in controversy, and then came to see me twice, and said it would be impossible to get the redemption money back, unless I assigned the certificates of purchase to him, and I, not knowing any better, assigned them to him in June or July, 1873. I did not read the assignments at the time they were made, as I had full confidence in him. The assignments were made at the house of Nathan Bird. There were two certificates assigned, being for the land in controversy. Nathan Bird wrote the assignments. He was my uncle and I thought he would do an uncle's part by me. There was no other consideration for the assignments of the certificates of purchase by me to Bird than the obtaining of the redemption money through said Bird. There was no money paid me by him or any one else for him at the time the assignments were made, neither was there any agreement expressed or implied for the payment of any money to me, or for any valuable consideration to pass from said Bird to me, directly or indirectly, for the assignment of said certificate of purchase, but said assignments were for the sole purpose of obtaining the redemption money for said lands, I believing at that time that the same had been redeemed, relying on the statements of Bird to that effect."

Jones deposed to other statements as having been made by Nathan Bird to him, which have some bearing on the issues in the cause.

*Section 2 of the Schedule to the Constitution of 1874*, provides that:

1. WITNESSES: Competency under constitution of 1874.

"In civil actions no witness shall be excluded because he is a party to the suit, or interested in the issue to be tried," etc.

This establishes a general rule and removes the common law incompentency of parties to suits, and persons interested in the issues to be tried. But in a *proviso* exceptions are

made to the general rule so established in the following words :

"*Provided* That in actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transactions with or statement of the testator, intestate or ward, unless called to testtify thereto by the opposite party," etc.

In this case none of the complainants sued as executor or administrator of Nathan Bird. Mrs. Bird sued in her own right as his widow, and the other complainants, claiming under him as heirs, sued in their own rights. The widow and heirs are not within the exceptions made by the *proviso* of the section to the general rule established by it.

In *Wassell* v. *Armstrong, ad. of Carroll,* 35 *Ark.,* 247, 274, the court adhered strictly to the exceptions made by the words of the *proviso*, in holding Wassell's evidence competent.

Whether the exceptions should be extended to other cases than those expressly named in the *proviso*, and which may seem to fall within its spirit, is a question for the Legislature, the subject being under its control.

See on this subject, 1 *Wharton's Law of Evidence, secs.* 464–477 *and notes* ; *Bragg* v. *Clark,* 50 *Ala.,* 364.

Under the decision in *Wassell's* case it was competent for Jones to make the statements above copied from his deposition for what they were worth.

II. Upon the back of one of the certificates of purchase was the following assignment :

2. TAX SALE: Assignment of certificate of purchase.

"STATE OF ARKANSAS,   &#125;

"LONOKE COUNTY.

"I assign the within to Nathan Bird, for value received.

W. N. JONES."

April 18, A. D., 1873.

Upon the back of the other certificate the assignment was as follows:

"I assign the within to Nathan Bird, for value received.

W. N. JONES."

April 18, A. D., 1873.

The two certificates so assigned, were in possession of Nathan Bird when he died, and after his death were in custody of his widow, until Jones induced her to deliver them to him, and he erased the assignments and procured tax deeds to be issued to himself upon the certificates.

The certificates were assignable in law, and the assignments, looking at them as instruments of conveyance, vested in Nathan Bird all the right and title to the lands acquired by Jones as purchaser at the tax sale, and after the time for redemption expired, the lands being unredeemed, Bird was entitled to have the tax deeds executed to him upon the certificates of purchase, and the assignments thereon, and on his death his widow and heirs succeeded to his title. *Gantt's Dig.*, sec. 5195, 5206.  <span class="margin">Effect of.</span>

Jones could not become re-invested of the title so transferred to Bird, by procuring Mrs. Bird to deliver the certificates of purchase to him, and erasing the assignments. *Strawn* v. *Norris et al*, 21 *Ark.*, 80; *Neal* v. *Siegel, ad.*, 33 *Ib.*, 63; *Taliaferro, ex'r.* v. *Ralton*, 34 *Ib.*, 503. And having, by means of such erasures, caused the tax deeds to be issued to himself, equity would not permit him, or one, not an innocent purchaser, holding under him, to keep titles so procured.  <span class="margin">Erasing assignment.</span>

III. Jones, however, denies, in his answer, that he assigned the certificates to Bird, for value, and alleges as affirmative matter, that the assignments were made to Bird, as his attorney, to enable him to collect the redemption money on a false representation by Bird that the lands had been redeemed.  <span class="margin">Denial of assignment, &c.</span>

<div style="margin-left:0">Burden<br>of proof.</div>

The burthen of proving this defense was upon Jones, the written assignments purporting to have been made for value. He proved it by his own deposition, after the voice of Bird was silenced by death, and he could not be heard to speak for himself. The decree of the court below was against complainants, and we have carefully examined all the evidence to see if it warranted the decree.

Jones deposed that he delivered the certificates to Bird early in the spring of 1873, and that Bird, after keeping them about three months, induced him to execute the assignments in June or July, of that year, by stating that it would be impossible for him to collect the redemption money unless he assigned the certificates to him. That at the time he assigned the certificates there was no one in the room but Bird and himself; that Phillip M. Bird was sitting on the door steps with his back towards the inside of the door.

In the material features of this statement, he is contradicted by three witnesses, as well as by the date of the assignments.

Thomas Bannon testified that the assignments were made by Jones, and the certificates delivered to Bird sometime in April, 1873; that he was then in the employment of Bird, was present, and saw him pay money to Jones for the land he had bought in Little Rock, &c.

Victoria Bird testified that the assignments were made early in the spring of 1873; that she was present, and saw Jones sign them; was not in the room all the time, and did not see any money paid, &c.

Philip M. Bird testified that the assignments were made by Jones on the eighteenth April, 1873, the day they bear date; that he saw Jones make them—that just as he walked into the room, Jones sat down to make them.

That Jones induced Mrs. Bird to deliver him the certificates, with the assignments upon them, after the death of Nathan

Bird, late in the year 1873, by disclaiming any interest in the lands, and promising to return them, (though he denies this in his answer and deposition), was proved by a number of witnesses; and no witness sustains his version of the matter.

That he erased the assignments, after so obtaining possession of the certificates, for the purpose of procuring the tax deeds in his own name, he, in effect, admits in his answer, but denies that the erasures were made feloniously, as charged in the bill, and submits that he had the right to make them. When directly asked, on cross-examination, if he erased the assignments, he declined to answer the question, on the ground that he might commit himself criminally.

If he had told Mrs. Bird that he had made the assignments to her deceased husband to enable him to collect the redemption money, as his attorney, and for no other purpose, and claimed the certificates and lands as belonging to him, it is not probable, from all the evidence, that she would have delivered them to him; but, if she had, being so advised, he would have stood much fairer upon the record now before us, than he does, and appeared more worthy of credit.

He failed to establish, by any direct evidence, except his own, which was contradicted, that the assignments were made to Bird without value, and for the sole purpose alleged by him. He proved by other witnesses vague declarations made by Bird, in his lifetime, that lands bought by him (Jones), at tax sale had been redeemed; but to overturn written evidence of title, as the assignments were, which Bird died in possession of, and which were unfairly obtained from his widow, after his death, by Jones, and an attempt made to destroy them, would require clear, unimpeachable and convincing proof, which he failed to produce.

On this branch of the case, the decree was, in our judgment, erroneous.

IV. It is claimed for Mrs. Simmons that she was an innocent purchaser of the lands for value, &c.

It appears that by deed, bearing date first of February, 1875, Jones conveyed the two tracts of land in controversy, and another tract of eighty acres, near by, to his sister, Mrs. Simmons, reciting as the consideration the love and respect that he had for his sister, and also five dollars to him in hand paid by her.

In her answer, Mrs. Simmons states that the deed was executed to her "for a good consideration in law and equity;" and again she states that it "was for a good and valuable consideration;" but she does not state what such "valuable" consideration was; nor that she paid him any money, or other thing of value for the lands.

W. T. Farguson, a Justice of the Peace, who wrote the deed, at the request of Jones, and took his acknowledgment of its execution, testified, in substance, that to his best recollection Jones came to him and said he was going away, and did not know that he would ever return, and had a preference as to whom the land should go in case he did not, and asked him to write a deed of gift. That he suggested to Jones that he should execute a deed with regular consideration, and told him that if he ever came back they could fix the matter up among themselves. To this he assented, and the deed was written as it now appears. Witness further stated that the reason why he suggested to Jones that he should execute a regular deed with consideration, was that he did not know how to write a deed of gift.

It appears that after Jones returned from Texas, he sold to his brother, at $4 per acre, the tract of land embraced in the deed to Mrs. Simmons, other than the two tracts in con-

Bird et al v. Jones et al.

troversy, gave him a bond for title, and received partial payments, &c.

It is probable, from all the circumstances in evidence, that the deed to Mrs. Simmons was simulated, or at most a deed of gift, and hence she was not a *bona fide* purchaser for valuable consideration. 2 *Story Eq.*, sec. 1502.

4. BONA FIDE PUR-CHASER: Donee in deed of gift is not, nor &c.

Moreover Philip M. Bird testified that he informed Mrs. Simmons, before the conveyance to her, that Jones had assigned the certificates to Nathan Bird, in his lifetime, and that his heirs were living on and claimed the lands.

Again, there was evidence conducing to prove that Nathan Bird was living on the lands as early as 1867, and at the time Jones purchased them at tax sale, and when he assigned the certificates to him, and until his death, and that afterwards his family continued in possession of the lands.

Furthermore, if Jones was guilty of forgery, in erasing the assignments, and by that criminal act obtained the tax deeds, (as to which, upon the case before us, we give no opinion), one holding under him could not be treated as an innocent purchaser. *United States* v. *Samperyac et al*, *Hempstead*, *C. C. Rep.* 118.

It is sufficient to say, upon the answer of Mrs. Simmons, and all the features of the evidence, that her defense of innocent purchaser was not made out.

The decree must be reversed and the case remanded to the court below, with instructions to render a decree in favor of complainants, divesting the title of defendants to the lands in controversy, and vesting it in complainants, as prayed by the bill, and for such further orders and proceedings as may be necessary and proper to close the case, in accordance with principles and practice in equity, and not inconsistent with this opinion.