BLAIR v. HENNESSY et al.

(Court of Civil Appeals of Texas. Galveston. May 9, 1911. Rehearing Denied June 1, 1911.)

1. APPEAL AND ERROR (§ 1071*)—HARMLESS ERROR—ERRORS IN FINDINGS OF FACT.

Where the exact date of the issuance of a certificate for land is immaterial to any issue presented on appeal in trespass to try title, any error in a finding of facts as to the date is harmless.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1071.*]

2. PUBLIC LANDS (§ 175*)—CERTIFICATES FOR LAND—RIGHTS ACQUIRED.

One obtaining from the government a certificate for public land can acquire title only by locating the certificate as prescribed by law, and the right to locate and acquire title descends on his death to his heirs, but, where he does not segregate and appropriate any part of the public domain by the location of the certificate, he acquires no title to any land.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 175.*]

3. TRUSTS (§ 95*) — CONSTRUCTIVE TRUST — FRAUD.

Where a transfer of a certificate for land was a forgery, the transferee acquiring title by location of the certificate and patent from the state became a constructive trustee for the benefit of the original holder of the certificate or his heirs on his death, who could recover the land as against him or as against any one acquiring the same with knowledge of the fraud.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 145–147; Dec. Dig. § 95.*]

---

4. VENDOR AND PURCHASER (§ 223*)—BONA FIDE PURCHASER.

One purchasing in good faith and for value a legal title without notice of any prior equitable title in the property is a bona fide purchaser, and he takes the title free from the equitable claims, but this doctrine does not apply where the deed through or under which the purchaser claims the legal title is a forgery, for in that case the deed is a nullity, and no title, legal or equitable, passes.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 223.*]

5. PUBLIC LANDS (§ 177*)—ASSIGNMENT OF CERTIFICATE—FORGERY—EFFECT—BONA FIDE PURCHASER.

Where a transfer of a certificate for land was a forgery, a grant of the land by the state to the transferee was subject to be divested by the state or by the original holder of the certificate, or his heirs, on proof of the fraud and forgery, inducing the state to part with its title.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 177.*]

6. PUBLIC LANDS (§ 177*) — FRAUD — BONA FIDE PURCHASER.

Where the effect of a forgery of a transfer of a certificate for land is only to deprive the defrauded party of a right to acquire a title, and the land has come by transfer into the hands of a bona fide purchaser for value without notice, though his grantor was the fraudulent party, the only remedy of the defrauded party is personal against the one committing the fraud.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 177.*]

7. PUBLIC LANDS (§ 178*)—BONA FIDE PURCHASER—NOTICE.

A transfer of a certificate for land was a forgery, but the transferee obtained a patent from the state, and then conveyed the land for value to a third person without actual notice of the fraud. There was nothing on the face of the patent or in the record of the General Land Office to put the third person on notice that the patent was fraudulently obtained. Inquiry by the third person would have disclosed a holding by the patentee of the land and his grantees for many years, during which there had been no claim of ownership by the holder of the certificate or his heirs. Held, that the third person was a bona fide purchaser, and his title was not subject to the equitable claims of the holder of the certificate or his heirs.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 178.*]

8. TRESPASS TO TRY TITLE (§ 10*)—TITLE OF PLAINTIFF—SUFFICIENCY.

Where a transferee of a certificate for land under a forged transfer obtains title from the state, the equitable title of the original holder of the certificate or his heirs based on a constructive trust in their favor as against the transferee or purchasers from him with notice is sufficient to support the statutory action of trespass to try title.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 13; Dec. Dig. § 10.*]

9. TRESPASS TO TRY TITLE (§ 25*)—DEFENSES—STALE DEMAND.

The defense of stale demand by mere lapse of time is available in trespass to try title based on an equitable claim of title.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 30; Dec. Dig. § 25.*]

Pleasants, C. J., dissenting in part.

Appeal from District Court, Leon County; S. W. Dean, Judge.

Action by T. D. Hennessy against J. M. Blair, in which P. A. Newport and others intervene. From a judgment for plaintiff and interveners, defendant appeals. Reversed and rendered.

Tharp & Whitehead and J. M. Chatham, for appellant. John G. Tod and Wm. Watson, for appellees.

PLEASANTS, C. J. This is an action of trespass to try title brought by appellee Hennessy against appellant to recover a survey of one-third of a league of land in Leon county patented to Tapley W. Bennett, assignee of Lucius Hibbard. Appellees, P. A. Newport, Nettie A. Mabry, and William Mabry, intervened in suit, and claimed title as heirs of Lucius Hibbard to an undivided one-third of the survey. Appellant disclaimed title except as to a tract of 1,175 acres out of said survey described in his answer, and as to which he pleaded not guilty and limitation of three, five, and ten years. The cause was tried without a jury, and judgment was rendered in favor of appellee Hennessy for an undivided two-thirds of the survey and for the interveners for two-fifths of the remaining one-third.

[1] The facts are as follows: Some time prior to the year 1839 the board of land commissioners of Brazoria county issued a certificate for one-third of a league of land to Lucius Hibbard; said certificate being No. 359. The findings of fact by the trial judge state that the certificate was issued February 16, 1833. This is manifestly a mistake because there was no land board of Brazoria county at that time; the law creating such board not having been enacted until 1837. The exact date of the issuance of the certificate is not material to any issue presented by the appeal, and therefore this erroneous statement in the findings of fact copied in the record is of no consequence. Lucius Hibbard died intestate in Ft. Bend county in 1839, leaving as his only heirs two brothers, Loren Hibbard and Levi Hibbard, and a sister, Lucinda Hibbard. A transfer of this certificate to Tapley W. Bennett purporting to have been executed on May 16, 1844, and acknowledged before Daniel D. Culp, a notary public of Harris county, is on file in the land office. A patent to this land was issued to said Bennett as assignee of Lucius W. Hibbard on October 8, 1845. This assignment of the certificate was a forgery; Lucius W. Hibbard, as before stated, having died several years before the date of the assignment. On the day this assignment was executed Tapley W. Bennett conveyed an undivided one-third interest in the one-third league to Alexander Patrick in consideration of his services in locating the certificate. In April, 1875, the land was partitioned by a decree of the district court of Harris county

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

and the north two-thirds thereof set apart to Bennett and the south one-third to Patrick. Bennett and Patrick and their vendees continuously claimed the land, paid taxes thereon, and exercised acts of ownership thereover, and no claim was ever asserted by the heirs of Lucius Hibbard until April 11, 1904, when Loren and Levi Hibbard executed a deed to appellee Hennessy, conveying all their interest in the survey. The date of the record of this deed is not shown, but some time prior to its record at a date not shown in the findings of fact or the statement of facts accompanying this record appellant purchased 924 acres from the holder of the Bennett title to the north two-thirds of the survey, and 251 acres from the holder of the Patrick title to the south one-third of the survey. These two tracts constitute 1,175 acres described and claimed in appellant's answer. He purchased this land without any notice of the claim of appellees, believing in good faith that he was acquiring the title thereto, and paid therefor the sum of $3,400. The interveners herein are the heirs of Lucinda Hibbard. There has been no sufficient occupancy and use of the land to vest title by limitation. Plaintiffs made affidavit that the purported transfer of the certificate to Bennett was a forgery.

Under appropriate assignments of error appellant contends that upon the facts found by the trial court, which are above set out, judgment should have been rendered in his favor on the ground that he was an innocent purchaser for value of the legal title to the land claimed by him without any notice of appellees' equity, and the further ground that, appellees having failed for over 60 years to assert their equitable title, their demand is stale and should not now be enforced. Neither the findings of fact by the trial court nor the statement of facts accompanying the record show the date of the location of the certificate. It was located by Patrick, and, as we understand the findings of the trial court, was located for Bennett. There is nothing in the findings or in the statement of facts from which it can be inferred that Hibbard had it located. The certificate did not give Hibbard title of kind to any land until a location was made thereunder.

[2] Hibbard, not having segregated and appropriated any part of the public domain by the location of the certificate, did not acquire title to any land. All that the certificate gave him was the right to acquire title to one-third of a league of land by locating the certificate in the manner prescribed by the statute.

[3] This right descended to his heirs, and, they having been defrauded of it by the forgery of the transfer of the certificate, the title acquired by the location of the certificate and the patent issued to Bennett by virtue of the equitable doctrine of a constructive trust inured to their benefit, and

they would be entitled to recover the land against the holder of the title who acquired same by the perpetration of the fraud or with knowledge of its perpetration, but the legal title passed to Bennett and through him to those holding under him. Appellant having purchased the legal title to the land for value and without any notice of appellees' right in equity to have a constructive trust established by which title would have been decreed to them as against Bennett and purchasers from him with notice of their rights, we think he should be protected as an innocent purchaser.

[4] There is no principle of equity jurisprudence more consonant with justice and right or more salutary in its application than the rule which protects one who has in good faith and for value purchased a legal title against a prior equitable claim of title or interest in the purchased property of which he had no notice at the time of his purchase. The rule is based upon the conception that a court of equity acts solely upon the conscience of litigant parties, and will only compel a defendant to do what in good conscience he is bound to do. If the relations between the litigants are such that in equity and good conscience the plaintiff ought to obtain the aid which he asks and the defendant ought to do or suffer what is demanded of him, then the court should grant the relief asked, but, if the relations are not of this character, the court will withhold its hand, and leave the parties to the operation of strict legal rules. "If a plaintiff holding some equitable interest or right sues to enforce it against a defendant who has in good faith obtained the legal estate, the court simply refuses to interfere and do an unconscientious act by depriving him of the advantage accompanying such an innocent acquisition of the legal title." 2 Pomeroy, Eq. Jurisprudence, par. 739. In further discussing the general doctrine of innocent purchaser, the author above quoted says, in paragraph 767 of the volume before mentioned: "In the first place, it is the very central portion of the doctrine to which all others have been additions, that, where the defendant acquired the legal estate at the time and as a part of his original purchase, the fact of his purchase having been bona fide for value and without notice is a perfect defense in equity to a suit brought by the holder of a prior equitable estate, lien, or incumbrance or other interest, seeking either to establish or enforce his equitable estate, lien, or interest or to obtain any other relief with respect thereto which can be given by a court of equity." This doctrine has no application when the deed through or under which the defendant claims the legal title is a forgery. Abee v. Bargas, 65 S. W. 489; Bird v. Jones, 37 Ark. 195; Camp v. Carpenter, 52 Mich. 375, 18 N. W. 113; McGinn v. Tobey, 62 Mich. 252, 28 N. W. 818, 4 Am. St. Rep. 848. When the defendant's claim of

title is under a forged deed, which deed being a nullity, no title, legal or equitable, could pass thereby to the defendant, and the title would remain in the owner unaffected by said forgery, it is manifest that in such case the essential basis of the doctrine of innocent purchaser, which is that the defendant has acquired the legal title by his purchase, is wanting, and therefore the doctrine cannot be applied.

In the instant case this essential of the doctrine is not lacking. The patent from the state placed the legal title to the land in Bennett. While Hibbard or his heirs were entitled to have received the title from the state, the fact is that they did not, but the title was conveyed by the grant of the state to Bennett. The fraud practiced on the state and on Hibbard or his heirs by the forgery of the certificate did not render the patent void.

[5] The title was in the state, having never passed to Hibbard, and the grant by the state put that title in Bennett subject to be divested by the state or by the heirs of Hibbard upon proof of the fraud and forgery by which the state was induced to part with the title.

[6] It is only where an owner has been apparently deprived of a title held by him by forgery that such forgery will defeat the right of an innocent purchaser of the forged title, and, when the effect of the forgery is only to deprive the defrauded party of the right to acquire a title, the general rule that when property which is acquired by fraud has come by transfer into the hands of a bona fide purchaser for value without notice, even though his grantor was the fraudulent party, the hands of a court of equity are stayed, and the remedy of the defrauded party with respect to the property itself is gone, and his only relief is personal against those who committed the fraud.

[7] There is nothing upon the face of the patent, or in the record in the General Land Office, to put a purchaser from the patentee upon notice that the issuance of the patent was fraudulently obtained. The patent was issued to Bennett as assignee of the certificate issued to Hibbard, which, as before said, only gave him the right to acquire a one-third league of land from the state. If the appellant was required to go behind the patent and investigate the evidence upon which the state acted in making the grant to Bennett, he would have found a transfer of Hibbard's right to acquire the land regular on its face, and which had been found sufficient, and had been acted upon by the officer of the state charged with the duty of determining to whom the grant should be made. If he had then made inquiries in the neighborhood in which the land was situated, he would have found that Bennett and those holding under him had held and claimed the land, exercising acts, and assuming and discharging the burdens of ownership for more than 60 years, during all of which time there had been no claim or assertion of ownership by the heirs of Hibbard. These facts being known to him, ordinary care and good faith on his part would not require that he hunt up the scattered heirs of Hibbard, whose residences are not shown by the record, to inquire what they might know of a transaction, free from suspicion on its face, and which occurred 60 years before. We think the undisputed facts of this case require the application of the doctrine of innocent purchaser, and it would be against conscience to require appellant to surrender to appellees the title acquired by him under the circumstances shown by the record.

This conclusion renders a decision of the question of stale demand unnecessary. We think it clear, however, that, if the defense of stale demand should be longer recognized as a bar to recovery in a suit in which an equitable title to land is asserted, this case calls loudly for its application. This equitable defense has been recognized and made effective by our Supreme Court in suits of this character in numerous decisions, among which are Carlisle v. Hart, 27 Tex. 350; League v. Rogan, 59 Tex. 435; Montgomery v. Noyes, 73 Tex. 205, 11 S. W. 138; Browning v. Pumphrey, 81 Tex. 163, 16 S. W. 870. But this court has held, in effect, in the following cases that in suits for the recovery of land it matters not whether the title asserted by the plaintiff be legal or equitable if the plaintiff has title as distinguished from a mere equity which would entitle him to acquire title, the suit will only be barred by adverse occupancy of the land as required under the statute of limitation of actions for the recovery of land, and that this is true whenever the claim or right asserted by the plaintiff would sustain an action of trespass to try title. Lumber Co. v. Pinckard, 4 Tex. Civ. App. 671, 23 S. W. 720, 1015; Lockridge v. Corbett, 31 Tex. Civ. App. 676, 73 S. W. 96; Betzer v. Goff, 35 Tex. Civ. App. 406, 80 S. W. 671; Lyster v. Leighton, 36 Tex. Civ. App. 62, 81 S. W. 1033; Storer v. Lane, 1 Tex. Civ. App. 250, 20 S. W. 852.

While no title passed to Hibbard by the issuance of the certificate, the title to the land acquired by Bennett by the location of the certificate and the issuance of the patent to him inured to the benefit of the heirs of Hibbard, who became upon his death the lawful owners of the certificate, the purported transfer thereof by Hibbard being shown to have been a forgery. Storer v. Lane, supra.

[8] Thus by operation of the equitable doctrine of a constructive trust the superior right or title to the land, as against the guilty beneficiaries of the forgery or purchasers from them with notice, was in said heirs, and we think was a title which would support the statutory action of trespass to try title.

It follows that, if the holding of this court in the cases before cited is sound, the defense

of stale demand is not available against plaintiffs in this suit. It seems to the writer that logically this should be the law. The equitable doctrine of stale demand was established by the court of chancery to meet the exigency arising from the fact that the legal defense of limitation was not available against an equitable demand. In our blended system of law and equity jurisprudence no such exigency arises. Since the legal action of trespass to try title is supported as well by an equitable as a legal title, the statutory defense of limitation is available against the assertion of either kind of title, and it seems to have been the legislative intent that occupancy under the statutes of limitation of three, five, or ten years should constitute the only bar by lapse of time available in a suit of trespass to try title. In several of the cases last cited the Supreme Court refused writs of error, but the facts disclosed by the record in those cases were such that the refusal of the writ did not commit the Supreme Court to an approval of the opinion of this court on the issue of stale demand. In the case of Stafford v. Stafford, 96 Tex. 106, 70 S. W. 75, the Supreme Court intimates that the defense of stale demand is available in a suit for recovery of land based upon an equitable claim of title, or at least that the question is an open one.

[9] This being the state of the authorities, the majority of the court are of opinion that stale demand was a defense of this suit. The writer adheres to the conclusions reached in the former opinions of this court, and thinks that mere lapse of time, unaccompanied by the occupancy required by the statute, would not constitute a bar to plaintiff's suit.

For the reasons indicated, we are of opinion that the judgment of the court below should be reversed and judgment here rendered for appellant, and it has been so ordered.

Reversed and rendered.