### Inez SIMS and Ruby HEFNER v. Faber WILSON and Pearl WILSON

73-114                                    501 S.W. 2d 214

Opinion delivered November 5, 1973
[Rehearing denied December 10, 1973.]

*Guy H. Jones, Phil Stratton & Guy Jones Jr.,* for appellants.

*Hartje & Hartje,* by: *Geo. F. Hartje Jr.,* for appellees.

Conley Byrd, Justice. Appellants Inez Sims and Ruby Hefner appeal from a decree refusing reformation or recision of a deed to them from appellees Faber Wilson and his wife Pearl Wilson. Appellants contend that the trial court erred in overruling a demurrer to the third party complaint against their husbands and in holding that the proof was not sufficiently clear and convincing to order reformation.

The record shows that appellees ran a roofing business adjacent to their home. The property, including the home, fronted 291 feet on Tyler Street in Conway. There was a circle drive for the business and the property behind the dwelling. The negotiations for the purchase of the property by appellants were carried out by their husbands William O. Sims and Opie Hefner. In reaching the terms for the purchase of the property all parties agree that there was a metal tab in the driveway and that

it was understood that the parties would share the costs of a partition fence to the rear of the building. The deed conveyed all but the east 90 feet. Admittedly, the description in the deed leaves from 2.7 to 2.8 feet of the business building on the Wilson 90 feet of the property.

Mr. Wilson says that the property line was discussed before the sale and that he placed marks on the building and pointed them out to Mr. Hefner before the sale. Shortly after the conveyance and before the appellants started their remodeling, the appellants caused a survey to be made. The survey in fixing the western boundary did so in accordance with the metal tab in the driveway. Wilson also caused a fence to be erected along the common boundary in back of the building before appellants started their remodeling, and the appellants, upon completion of the fence, paid their half of the costs thereof.

George Lachowsky, a surveyor, fixed the boundary in accordance with the metal tab in the driveway and along the fence line where it joined the building.

William O. Sims testified that it was mutually understood that the driveway would be shared and that the property included everything from the corner of the building west. Mr. Sims admits that the stake or metal tab was viewed by the parties and that the first survey was made after the sale and before the fence was put up. He also admits that the partnership fence was put up before appellants moved in and occupied the building.

Opie Hefner testified that they were buying from the east end of the building west. He saw the metal tabs in the driveway but does not remember what was said about the metal tabs. He also saw the location of the partnership fence when it was finished but made no complaint.

The record is rather conclusive that this litigation was not commenced until after Wilson erected an electric power pole at the location of the metal tab and strung a temporary fence so as to prevent the use of the circle drive by appellants.

Appellants admit that one seeking to reform or rescind a deed is put to the task of proving his case with clear, cogent and convincing evidence. Here the proof shows: that the appellants viewed the metal tab before the purchase; that they caused a survey to be made; that the partnership fence was built before they remodeled the buildings in accordance with Wilson's understanding of the location of the boundary; and that appellants paid for their half of the cost of construction without making complaint of the location thereof. Under the circumstances we cannot say that appellants have sustained their burden of proof by clear, cogent and convincing evidence.

In arguing that the trial court erred in not sustaining the demurrer to the Wilsons' cross-complaint against appellants' husbands, appellants contend that reversible error was committed because the husbands' testimony as witnesses would be entitled to more weight than as parties. Even if we should agree with appellants still the alleged error would be harmless here. When we give full credit to testimony of the husbands who negotiated on behalf of their wives and to the fact that one does not ordinarily purchase property when the improvements are located partly on and partly off the property, still such evidence does not become clear and convincing when it is viewed in the light of the parties subsequent conduct— *i.e.*, having the property surveyed and participating in the erection of the partnership fence.

Affirmed.

HARRIS, C.J., dissents.

CARLETON HARRIS, Chief Justice, dissenting. I cannot agree with the conclusions reached by the majority. In the first place, in my view, the chancellor decided the case on an erroneous premise. He stated, "The cases seem to hold that the proof required for reformation must be such that there is *no possibility of error* [my emphasis] in the decision," and cited the case of *Mitchell v. Martindill,* 209 Ark. 66, 189 S.W. 2d 662. The language

referred to is a quote from the earlier case of *Sewell* v. *Umsted,* 169 Ark. 1102, 278 S.W. 36, and reads:

> "The authorities all required that the parol evidence of the mistake, and of the alleged modification, must be most clear and convincing, . . . or else the mistake must be admitted by the opposite party; the resulting proof must be established beyond a reasonable doubt. Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a mere preponderance of the evidence, but only upon a certainty of the error."

To me, this is no more than saying that the evidence must be clear, cogent, and convincing, which is what practically all of our cases hold, though some use the reasonable doubt language. Certainly, I do not agree that the case can be construed as saying that the proof must be such that there is *no possibility of error.*

In my view, the evidence was clear, cogent, and convincing, and I do not depend upon the fact that two witnesses testified as to the transaction on behalf of appellants, while only appellee Faber Wilson testified on behalf of appellees. Of course, this portion of the evidence was a "swearing match," Faber Wilson testifying that he told Sims and Hefner that the east line of the property did not clear the building, and Sims and Hefner testifying that Wilson did not tell them that the east line severed a portion of the building. Therefore, considering this testimony a "stand-off", I think the balance of the evidence, and the conclusions to be drawn therefrom bring appellants' evidence to the required status of being clear, cogent, and convincing. The testimony is undisputed that appellants had full use of the entire building, painted the exterior after acquiring title in August, 1970, and had the interior renovated and adapted to their use as a day care center; also enjoying the full use of the circle drive until subsequently halted by Wilson. I consider it incredible that one would purchase land which conveyed only a portion of a building situated on the premises, and which was to be used daily. Not only that, I consider it so unusual, that I believe a prudent seller, who was

attempting to reserve a portion of a building, would spell out such reservation clearly and unequivocally. That, of course, was not done. Of even more significance to me is the fact that appellees, approximately a month after this litigation was instituted by appellants, conveyed the residue of their property constituting a homesite to Dr. James Smith Garrison, subsequently made a party defendant by appellants. *The warranty deed from the Wilsons to Garrison excluded the area in dispute in this litigation,* but on the same day, the Wilsons gave Dr. Garrison a *quitclaim deed* to the disputed area. It is significant to me that the Wilsons were unwilling to warrant the title to the disputed property, and even more interesting is the reason Mr. Wilson gave for giving two deeds. He said he "didn't want Doc Garrison involved in it, and that's the reason I gave it." I suggest that a more likely reason would be that he felt that he did not have title to the disputed area, and not wanting to become liable to Garrison, executed only a quitclaim deed. In my judgment, the decree should be reversed.