## M. E. LORING, GUARDIAN, v. SARAH JACKSON ET AL.

### Decided May 29, 1906.

**1.—Application for Continuance—Discretion of Court.**

An application for continuance to procure testimony to rebut testimony offered by the opposite party is addressed to the discretion of the court, and when the testimony offered by the opposite party is withdrawn the application for continuance is properly overruled.

**2.—Forgery—General Reputation.**

Evidence is admissible that a grantor in a deed bore the general reputation in the community in which he lived and about the date of the alleged forgery, of a forger of land titles.

**3.—Trial Without Jury—Improper Testimony.**

It is not improper for the court in a trial without a jury to hear testimony in order to determine its admissibility.

**4.—Forgery—Impress of Seal—Testimony.**

As a circumstance tending to show that a paper purporting to be a certified copy of a deed was a forgery, it was proper to admit in evidence certain instruments proven to be genuine which bore the impression of the seal used by the same county clerk about the same time to show by comparison a difference in the impress of the seal, and to allow a witness to testify that he had examined a number of like old certificates of said clerk and that they all bore the impress of the same seal as the genuine instruments.

**5.—Forgery—Innocent Purchaser.**

One claiming under a forged deed can not be an innocent purchaser.

**6.—Finding of Fact—Circumstantial Evidence.**

A finding of fact may be supported by a combination of slight circumstances, no one of which taken alone would be sufficient. Evidence as to forgery considered and held sufficient.

**7.—Limitation—Water Barriers—Cases Distinguished.**

The enclosure of a tract of land partly by fence and partly by impossible water barriers or courses is sufficient to support the statute of limitation if the natural barriers are so used in connection with the fences as to indicate that they are relied upon to enclose the land. Facts considered and distinguished from the facts in Polk v. Beaumont Pasture Co., 64 S. W. Rep., 61, and Vineyard v. Brundrett, 42 S. W. Rep., 232.

Appeal from the District Court of Chambers County. Tried below before Hon. L. B. Hightower.

*Robertson & Whitaker, D. M. Reedy* and *F. J. McCord,* for appellant. —To warrant the court in refusing to grant a continuance on an application (which is otherwise good and so held by the court) on account of the absence of material evidence, the opposing party must admit the truth of what is proposed to be proved. Maughmer v. Bering, 46 S. W. Rep., 917.

The failure of a witness to answer a material question is ground for suppressing his deposition. Houston & T. C. Ry. Co. v. Shirley, 54 Texas, 142; Lee v. Stowe, 57 Texas, 451; Davis v. McCartney, 64 Texas, 589; Coleman v. Colgate, 69 Texas, 90; New York T. & M. Ry. Co. v. Green, 90 Texas, 263.

The general rule is that in a civil action, the character of neither party thereto, nor of any other person connected with the transaction. is involved, and it can not be made the subject of inquiry, and even where some person connected with the transaction involve in the suit, is charged with fraud or moral delinquency, will not result in allowing evidence of character to be admitted. Redus v. Bunett, 59 Texas, 582; 5 Am. and Eng. Ency. of Law, pp. 861 and 863; Norris v. Stewart, 105 N. C., 455; S. C. 18 Am. St. Rep., 917; Rankin v. Busby, 25 S. W. Rep., 679; 1 Greenleaf's Ev., secs. 54 and 55.

A copy of a conveyance of land situated in Liberty County, which is archived in Nacogdoches County, although proved and recorded afterwards in the county where the land lies is not admissible as a recorded instrument. Frost v. Wolf, 77 Texas, 459.

The instruments in question not being properly recorded or archived, examined copies of the original were not admissible in evidence without proof of the execution of the originals. Rev. Stats., art. 2306; Frost v.

Wolf, 77 Texas, 459; Smith v. Gillum, 80 Texas, 120; Heintz v. Thayer, 92 Texas, 664.

A certified or examined copy would only be admissible where the original transfer would, if produced, come from proper custody, and on account of its antiquity and long assertion of title by those claiming under it, would be admissible without proof of execution. Hill v. Templeton, 29 S. W. Rep., 537.

The mere occupancy of land by grazing livestock upon it, without substantial enclosures or permanent improvements, is not sufficient to support a plea of limitation under our statute. Fuentes v. McDonald, 85 Texas, 132; Tarlton v. Kirkpatrick, 21 S. W. Rep., 405; Whitehead v. Foley, 28 Texas, 291.

Exclusive claim without concurrent adverse possession, or adverse possession without concurrent exclusive claim is not sufficient to support the statutes of limitation. Mosely v. Withie, 26 Texas, 720; Mhoon v. Cain, 77 Texas, 317; Craig v. Cartwright, 65 Texas, 424; Schleicher v. Gatlin, 85 Texas, 272.

*Hugh Jackson* and *A. D. Lipscomb,* for appellees.—The inclosure of 30,000 acres in a pasture composed of about twelve miles of fencing and about fifteen to twenty miles of natural barriers, accompanied with the pasturing of a large herd of cattle, all bearing the same brand, duly recorded, to the exclusion of all other cattle and all other persons from such pasture; the use for which the land is most appropriate being the grazing of cattle; the same being almost daily attended by a representative of the owner, and the owner having his fence along the line of the particular land in question, and having some visible improvements upon such land, altogether constitute such adverse possession as contemplated by the statutes of limitation. Richards v. Smith, 67 Texas, 612; McDow v. Rabb, 56 Texas, 161; Portis v. Hill, 3 Texas, 279; Whitehead v. Foley, 28 Texas, 285; Cantagrel v. Von Lupin, 58 Texas, 577; Taliaferro v. Butler, 77 Texas, 582; 16 Am. and Eng. Ency. of Law, 146.

Where one commences his possession of land under a given claim of title thereto, continuing to claim in his own right, his claim as an element necessary to give title by limitation is not impaired by the fact that he thereafter buys in other claims, also adverse to plaintiff. Portis v. Hill, 14 Texas, 75; Converse v. Ringer, 6 Texas Civ. App., 57.

REESE, Associate Justice.—This is a suit in trespass to try title by Mrs. M. E. Loring, guardian of Susie B. Loring, against Mrs. Sarah Jackson and others, to recover the Maria T. Boden league of land in Chambers County.

Defendant pleaded general demurrer, general denial and "not guilty" and limitation of three, five and ten years, to which plaintiff replied setting up the disability of minority of Susie B. Loring. Defendants also pleaded that the deed from Juan Baptiste and Pierre Boden, heirs at law of the original grantee, under which plaintiff claims, is a forgery.

The cause was tried by the court without a jury and judgment rendered for defendants, from which plaintiff appeals.

Conclusions of law and fact were filed by the trial court.

The application of appellant for a continuance was not based upon

statutory grounds, but was addressed to the sound discretion of the court. After the admissions made by appellees we can not say that the refusal of the application was an abuse of the discretion of the trial court. One of the alleged purposes of the continuance was to enable appellant to procure testimony to meet the aspersions upon the reputation of her witness, W. R. Leonard, with regard to his connection with land forgeries as testified to by appellees' witness, S. T. Robb. To meet this ground appellees agreed that this part of the testimony of Robb, who testified by deposition, might be disregarded by the court. This put the testimony out of the case, and left Leonard unimpeached. There was no longer any necessity for evidence to show his innocence of the charge made against him by Robb. The rule that requires an admission that independent testimony for which a continuance is sought is true, does not apply. There being no charge left in the evidence impeaching the integrity of Leonard, testimony as to his integrity would have been unnecessary. His reputation was not in issue. (Rankin v. Busby, 25 S. W. Rep., 679.)

As to the testimony of other witnesses, to meet the issue as to the date of the death of Juan Baptiste Boden, one of the grantors in the deed executed in 1857, the agreement of appellees that it "might be assumed" that he died in 1858 was sufficient as an admission that he was alive at the date of the alleged forged deed. This was also a sufficient answer to the application insofar as concerns the desired testimony of Chamberlain and Fosky by whom appellant alleges she could prove the date of the death of Juan Baptiste Boden.

In view, however, of the disposition which is made of the case upon the defense of limitation, with which the matters set up in the application for continuance had no relation, error in overruling the application, if any, was harmless.

The court did not err in refusing to suppress the deposition of I. S. Robb and to exclude the testimony contained therein as to the general reputation of G. W. H. Martin as being a forger of land titles. The motion to suppress the deposition was based upon the alleged failure of the witness to answer fully certain cross interrogatories. We think that the answers were sufficient for all practical purposes. (Houston & T. C. Ry. v. Shirley, 54 Texas, 142.)

Upon the proposition that evidence of the general reputation of Martin as a forger of land titles was irrelevant and inadmissible the authorities are not uniform. (5 Am. and Eng. Ency. of Law, 862-3.) Appellees in their brief cite the case of De La Vega v. Leuage (2 C. C. A., 256), as settling the question. The lengthy opinion in that case makes no reference to the point. The pleadings of appellee directly charged that the alleged deed from Pierre and Juan Baptiste Boden to Martin was a forgery which involved the charge that Martin had committed, or at least was privy to the forgery. We think that the evidence as to the general reputation which Martin bore in Trinity County where he lived, and about the date of the alleged forged deed, as that of a forger of land titles was admissible.

There is no merit in the third assignment of error which attacks the ruling of the court in admitting certain testimony of the witness Hugh Jackson, in view of the explanation given by the trial court in allowing

the bill of exceptions. It was not improper for the court in a trial without a jury to hear the testimony in order to determine its admissibility. Having done this the court, as stated in the bill of exceptions, would have declared it inadmissible, but appellant insisted that it should go in the record with his bill of exceptions. The trial judge states that regarding the evidence as inadmissible it was not considered by him in making up his judgment.

The evidence was not admissible, but we can not agree with counsel that the trial judge could not completely divest himself of any impression which it might have produced upon his mind, when he came to consider the evidence for the purpose of rendering judgment. Even juries are supposed to be capable of doing so when evidence improperly admitted is afterwards withdrawn from their consideration. A trained judge acquires the habit of doing so completely.

One of the alleged marks of suspicion about the certified copy of the deed from the Bodens to Martin was that the impression of the seal of the county clerk of Liberty County, where the original purported to have been recorded, to his certificate, was different from that of the seal in use by said clerk and his predecessor for several years immediately before and after the date of such certificate to the copy of this deed. To prove this H. H. Jackson was sworn for appellees and produced certain instruments proven to be genuine, which bore the impress of the seal of the county clerk of Liberty County, one dated 1851, one 1856 and one 1861. The witness was further allowed to testify that he had examined a number of like old certificates of said clerk and that they all bear the impress of the same seal, except the certificate to the alleged certified copy of deed introduced in evidence by appellant, and that this impression is about one-sixteenth of an inch smaller than the others. In connection with this testimony comparison was made by the trial judge and a witness, sworn for that purpose, who made the comparison of the copy in question with those produced by the witness Jackson, with an instrument called a protractor, with a like result. Appellees were seeking to prove that in fact Pierre and Juan Baptiste Boden did not execute a deed to Martin of which the certified copy introduced in evidence purported to be a copy. The alleged original bore date September 13, 1857, and appellant introduced in proof of the original what purported to be a certified copy made by the county clerk of Liberty County June 5, 1858. The evidence of the forgery was entirely circumstantial, appellees' theory being that the certified copy was a forgery as well as the original deed, if such ever existed. We are inclined to think that the evidence was admissible as a circumstance to prove the forgery. These documents have been sent up with the record and we have carefully compared the different impressions of the seal upon the documents produced by the witness Jackson with that upon the copy of the deed in question, and we must say that we are not impressed with the force or value of the evidence thus furnished.

The findings of fact and conclusions of law thereon with regard to the possession by appellees and their ancestor of the Boden league, appear to be full and specific and there was no error in refusing further findings upon motion of appellant which could have been only useless repetition of the findings made.

The testimony with regard to the conveyance by Marie Teresa Boden to Pinckney Caldwell in 1835 of the land in controversy appears to us to be immaterial in any view to be taken of it. It could not properly have affected the result of the trial. If the deed from Pierre and Juan Baptiste Boden to Martin, which is an essential link in appellant's chain of title, be a forgery, this of itself is an effectual bar to her recovery. If this deed be genuine she would be entitled to be protected in her title on the ground that she and those under whom she claims are innocent purchasers without notice of this deed from Mrs. Boden. (Eastham v. Hunter, 86 S. W. Rep., 323.) For the reason that the deed to Martin was found by the trial court to be a forgery the court finds further that appellant holding under such forged deed, could not be an innocent purchaser.

The findings of the court that plaintiff made no sufficient proof of innocent purchaser in good faith for value, which is assigned as error in appellant's seventh assignment, must have been based upon the finding that the deed from the Bodens to Martin was a forgery. If this deed was a genuine instrument we think the evidence shows that those claiming under it were such purchasers. This is conclusively shown by the testimony of W. R. Leonard, who seems to have been discredited by the court principally, if not altogether, by the evidence from which the court found the deed to be a forgery. Leonard testified that he saw the grantors execute this deed and receive the price of the land. If the other evidence led to the conclusion that this deed was a forgery, naturally it would so far discredit Leonard that the court was justified in disregarding his testimony entirely.

The findings of the trial court that this alleged deed from Pierre and Juan Baptiste Boden to Martin was a forgery is assailed by appellant in her ninth assignment of error as against the weight of the evidence. This deed was attempted to be proven by a certified copy from the records of deeds of Liberty County, purporting to have been made on the 5th of June, 1858, of a deed purporting to have been recorded January 24, 1858, and by the testimony of W. R. Leonard that he saw the parties execute the deed. Its genuineness was assailed by evidence of various circumstances which the court found to be sufficient to show that it was a forgery. Many of these circumstances were very slight and standing alone would not be held sufficient to cast suspicion upon the deed. Some of them are set out by the trial court in its finding upon this point, as the evidence of the witness Manchaca, who testified upon the stand, that he knew Pierre and Juan Baptiste Boden and that Pierre Boden was killed in 1839 (the deed purports to have been executed in 1857), the notorious reputation of Martin as a forger of land titles, as shown by the testimony of S. T. Robb, and indications of fraud upon the papers themselves. Other circumstances referred to are not specifically set out in the court's findings. The action of Martin in taking out a certified copy a few months after the original was recorded was an unusual circumstance.

It is claimed by appellee that the certified copy of the deed to Martin is a forgery, that is, that the original was not in fact entered upon the records of Liberty County. The only evidence of this, so far as is disclosed by the record, is the difference in the size of the impression of the

seal on this, and that on other instruments proven to be genuine, of about one-sixteenth of an inch. If the finding of the court rested upon the assumption that the certified copy was a forgery we would hold that it is not supported by the evidence, but taking all of the evidence in the record tending to cast suspicion upon the deed in question, we are not prepared to say that the finding of the trial court that it is a forgery is so against the weight and preponderance of the evidence as to justify this court in sustaining the assignment of error presenting that question.

Other assignments of error assail the findings of fact and the judgment of the court thereon, that appellant's claim is barred by the statute of limitations of five and ten years. Descent was cast upon the children of Lucius Loring by his death in 1886 at which time they were under disability of minority. To bar appellant's claim the statute must have been set in operation before the death of Lucius Loring. Upon this point the court found as follows:

"James Jackson, deceased, husband of the defendant, Mrs. Sarah Jackson, and father of the other defendants, enclosed the land in controversy as early as 1880. James Jackson died in 1895. He and his surviving wife and descendants have continually kept the said land enclosed since 1880. This enclosure consists in part of fencing extending on and along the west line of the land in controversy, constructed by said Jackson and continuously maintained and kept up by him and his surviving wife and descendants to the present time, and in part of impassable water lines. They have made use of the land for pasturing their herd of cattle which consists of from three to five thousand head. Since they first took possession of the land defendants and their ancestors have paid all taxes on the land in controversy regularly and promptly every year since and including 1880 up to the present time. On June 5, 1884, Henry Sayles executed a conveyance to said James Jackson, deceased, of the entire league of land in controversy; this was placed duly of record in Chambers County on the 20th day of June, 1884. From the spring of 1885 up to and including the year 1890 the defendant's ancestor kept up the house on the premises, which was used to camp in and hunt from and in connection with the rounding up and care of cattle, this last circumstance not being regarded as important. I find that the enclosure maintained by the defendants and their ancestors has always been as complete and effective as if an ordinary fence had been extended all the way around the pasture. The said pasture contains about 26,000 acres and all the land in same being owned by defendants at the present time except about 180 acres which are held under lease; that all of the land was either owned or claimed exclusively by the defendants and their ancestors at the time of their taking possession in 1880, or so held under authority from persons whose title was recognized by the defendants and their ancestors, and during all the period they were claiming the land in controversy as their own."

These findings are supported by the evidence and are here adopted.

The following sketch, copied from appellant's brief, will explain the conditions with regard to the enclosure.

The Boden league was enclosed, with other lands belonging to or controlled by Jackson, in a large pasture. On the north and east the enclosure consisted alone of the impassible water barriers of Oyster Bayou and East Bay. Robertson's Bayou formed a small part of such enclosure on the southeast. The enclosure on the south and west was a

substantial wire fence with gates for entrance. There were about twelve miles of fence and about fifteen or twenty miles of water barrier. The fence was erected by Jackson, appellees' ancestor, for the sole purpose of enclosing the pasture in question, including the land in controversy, and, as found by the court, all of the land within the enclosure was owned or claimed exclusively by appellees or their ancestor or held under authority of the owners whose titles were recognized by them. The facts are entirely different from those in Polk v. Beaumont Pasture Co. (64 S. W. Rep., 61), and Vineyard v. Brundrett (42 S. W. Rep., 232).

It is true that appellant entering this enclosed pasture from the water side would have encountered no obstruction of any kind in getting to the land claimed by her, but this would be the case with every enclosure fenced to any considerable extent by a water barrier. Such enclosure, however, would be sufficient as a basis for the statute of limitation "if the natural barriers are so used in connection with the artificial barriers as to indicate that they are relied upon to inclose the land and keep out other persons desiring access thereto." (Polk v. Beaumont Pasture Co., *supra.*) The fence forming part of the enclosure in the present case ran along one of the lines of the league in controversy for nearly the entire length of one of the sides of the league. The fence was erected by Jackson and maintained by him and appellees, his successors in the title, for the purpose of enclosing and thus taking exclusive possession, adverse to appellant, of the land in controversy, together with other lands in the enclosure claimed by appellees, and the possession thus taken and maintained was amply sufficient to give notice to appellant of such adverse holding. In addition, a fact of no value of itself, but of some force in connection with the circumstances of the enclosure, appellees kept about 5,000 head of cattle in their own brand in the pasture, no other cattle being allowed therein, and kept for a great portion if not all of the time a small house on the land used occasionally by persons caring for the cattle.

We think the facts constitute such notorious adverse possession, use and occupation of the land as to bar appellant's claim under the statute of limitations. The findings of the court show that such possession was for a sufficient length of time, under the other facts found, to authorize the conclusion of law that appellees had title under both the five years and the ten years statute of limitations. This was not affected by the proceedings in the Federal Court against James Jackson and others. There was nothing in the proceedings and judgment in this case inconsistent with James Jackson's claim under the Sayles deed, or that could be construed as an abandonment of his claim under that deed. If the finding of the trial court on this issue be correct, none of the errors assigned, if errors in fact, would be material, as they have no bearing upon this issue.

We find no errors requiring a reversal of the judgment, and it is affirmed.

*Affirmed.*

Writ of error refused.