GREEN v. EDDINS et al.   (No. 1322.)

(Court of Civil Appeals of Texas. Texarkana. May 11, 1914. On Motion for Rehearing, May 14, 1914.)

1. DEEDS (§ 45*)—FORGERY—EFFECT.

No interest in land could be predicated on forged deeds.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 89–94; Dec. Dig. § 45.*]

2. VENDOR AND PURCHASER (§ 261*)—PROPERTY CONVEYED.

Where a grantor had previously assigned secured notes, and conveyed at the same time to the assignee the "vendor's lien rights, equities, and interest" which, as prior vendor, he then had in the land, a second grantee and assignee of the notes only took by conveyance to him the right to receive any balance of the proceeds of a sale made to satisfy the notes.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 674–686, 688–695; Dec. Dig. § 261.*]

3. VENDOR AND PURCHASER (§ 231*)—BONA FIDE PURCHASER.

Subsequent purchasers of land could not claim as innocent purchasers for value, where, at the time of the conveyance to them, there was then recorded a prior deed covering the same land, executed by their grantors.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 487, 513–539; Dec. Dig. § 231.*]

4. BILLS AND NOTES (§ 345*)—BONA FIDE PURCHASERS.

Neither an equitable assignee of notes, nor those claiming under him, could claim as innocent purchasers, where the assignee never had possession of the notes.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 849–852; Dec. Dig. § 345.*]

Appeal from District Court, Tarrant County; Marvin H. Brown, Judge.

Action by L. R. Green against J. L. Eddins and others. From a judgment in part for plaintiff, and against him in favor of certain of defendants, plaintiff appeals. Reversed and remanded, with directions.

By a deed dated August 28, 1909, R. W. Brummett, in consideration, as recited therein, of $6,000 paid to him by J. L. Eddins, the execution and delivery to him by Eddins of his four promissory notes for sums aggregating $9,082.50, payable to his (Brummett's) order, one on May 26, 1910, and the others on August 28, 1910, and the undertaking by Eddins to pay a balance of $936 due to the state thereon, conveyed to Eddins 960 acres of land in Dallam county. By the terms of the deed the vendor's lien was retained on the land to secure the payment of the four notes referred to. The deed was recorded September 9, 1909. August 16, 1910, Brummett indorsed and delivered the four notes to E. C. Hyde as collateral security for his note of that date in Hyde's

─────────────────────────────

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

favor for $4,500, and on August 19, 1910, by a writing of that date, assigned to Hyde "the contract lien, vendor's lien, rights, equities, and interest in said land which I have," it was recited, "by virtue of being the vendor in said deed [to Eddins] and payee in said notes." On the same day, to wit, said August 19, 1910, Hyde, in consideration of $4,500 paid to him by L. R. Green, indorsed and delivered to Green the note for $4,500 made by Brummett, and at the same time transferred and delivered to Green the Eddins four notes held by him as collateral security for said $4,500 note. Afterwards, by an instrument dated October 29, 1912, Hyde assigned to Green "all rights," it was recited in the instrument, "interests, equities, and titles that I have and that were conveyed to me by R. W. Brummett in written transfer dated 19th day of August, 1910, hereby conveying and transferring to the said L. R. Green the original vendor's lien reserved on the above-described land to secure their payment, the same having been by R. W. Brummett transferred to me by said written transfer dated August 19, 1910, as above referred to. I hereby transfer, assign, and set over unto the said L. R. Green all my rights and all the rights of R. W. Brummett to said land and lien retained in said deed from R. W. Brummett to J. L. Eddins." Default having been made in the payment of the $4,-500 note, it seems that Green sued and recovered judgment thereon. Afterwards, to wit, on February 27, 1913, Green commenced this suit against Brummett, Eddins, Hyde, D. S. Arnold, J. E. Hutcherson, Noah Roark, Lee Newbury, E. S. Owens, Mrs. Helen Moore, the Bonner Loan & Investment Company, and others, who need not be named, as the suit as to them was afterwards dismissed. The relief Green sought was: (1) Judgment for the amount of the four notes made by Eddins to Brummett, and foreclosing the vendor's lien retained on the 960 acres of land to secure same; (2) in the alternative, if the court should find that any of the parties had acquired rights in the land superior to his, for a personal judgment against the defendants "for whatsoever amount the court should hold to be superior to his rights and lien."

Brummett, Eddins, Hyde, and Arnold did not defend against the suit. The defenses urged by Newbury, Mrs. Moore, the Bonner Loan & Investment Company, Hutcherson, and Roark were based on facts substantially as follows:

January 25, 1912, Brummett, by an instrument reciting the fact that he had conveyed the land to Eddins August 28, 1909, and received as a part of the consideration therefor the Eddins notes for $9,082.50, and further reciting that, none of said notes having been paid, he had on December 18, 1911, for a valuable consideration, sold and conveyed same to Arnold, ratified and confirmed the sale he had so made to Arnold, and "released, conveyed, and quitclaimed" to Arnold "all interest, right, claim, or title" he had "in and to said notes, and in the said land," and "empowered the said Arnold or his assigns to release said land from any liens created by said notes." By an instrument dated March 7, 1912, purporting to have been executed by Eddins, "in consideration of the sum of one dollar and the consideration of other valuables, and subject to $9,000 incumbrance," the land was attempted to be conveyed to J. C. Cummins, who, by an instrument dated May 22, 1912, attempted to convey same to Hutcherson in consideration of "cash in hand paid and the exchange of other property, also the assumption by the said Hutcherson of 97½ cents per acre due the state of Texas, and subject to an incumbrance of $9,000." Both the deeds last referred to were at the trial conceded to be forgeries, and none of the parties claimed that they operated to pass the title to the land. By an instrument dated May 25, 1912, in which it was recited that Brummett had made the conveyance of January 25, 1912, to Arnold, as noted above, and in which it was further recited that the Eddins notes had been fully paid by Hutcherson, "who is the present owner of the above-described land" (to wit, the 960 acres conveyed by Brummett to Eddins), Arnold "released, discharged, and quitclaimed" to Hutcherson "all the right, title, interest, and estate in and to" the land which he "had or might be entitled to by virtue of being the owner of said vendor's lien notes," and declared said property "released and discharged from any and all liens created by virtue of said vendor lien notes." On the same day, to wit, May 25, 1912, by his warranty deed of that date, Hutcherson conveyed 320 acres of the land to Roark, who on June 7, 1912, conveyed same to Newbury in consideration of $2,100 paid to him by Newbury, and the assumption by Newbury of the payment of a note (amount not stated) he (Roark) had made to Owens, secured by a trust deed he had given on the land, and the further assumption by Newbury of the payment of a balance due the state on the land. On the same day, to wit, June 7, 1912, Hutcherson conveyed the other 640 acres of the 960 acres to Newbury in consideration of $6,400 cash (as recited) and the assumption by Newbury of the payment of a balance due the state thereon. September 20, 1912, Mrs. Moore, through the Bonner Loan & Investment Company, loaned Newbury $3,000, and Newbury, to secure the payment of the sum, made and delivered to her a mortgage on the land, and at the same time made and delivered to the Bonner Loan & Investment Company a second mortgage thereon to secure $242 he owed to them for services in connection with the loan made to him by Mrs. Moore. Newbury afterwards paid to the state a balance of $647.16 due on the land, and on October 8, 1912, it was patented to Eddins as assignee. The trans-

fers of August 19, 1910, from Brummett to Hyde, and of October 29, 1912, from Hyde to Green, were not placed of record until November 2, 1912; and neither Newbury, Mrs. Moore, the Bonner Loan & Investment Company, nor Owens, at the time of the transactions referred to, to which they were parties, had knowledge of the existence of same. The parties mentioned relied upon an abstract embracing the forged deeds referred to, and, because it did, showing on its face title to the land to be in Hutcherson.

On the facts stated, Newbury claimed to own the land, and sought, as against Green and Eddins, judgment quieting his title. If this relief was denied to him, then he sought to be subrogated to Arnold's rights as the owner of Brummett's equity in the Eddins notes. Mrs. Moore and the Bonner Loan & Investment Company claimed protection on the ground that they had acquired the liens they asserted in good faith, for value, and without notice of Green's claim. Owens sought judgment against Roark and Newbury for $1,100 he had loaned Roark, and also asked for a foreclosure of the lien of the trust deed Roark had made to him on the 320 acres Hutcherson had conveyed to him.

The verdict of the jury was in accordance with peremptory instructions given them by the court, and on the verdict judgment was rendered as follows: (1) In favor of Green against Brummett for $6,414.90, interest and costs; (2) in favor of Owens, Newbury, Roark, Hutcherson, Mrs. Moore, and the Bonner Loan & Investment Company against Green for costs; (3) in favor of Newbury quieting his title as against Green and Eddins; (4) in favor of Owens against Roark for $900 and interest, and foreclosing as against Roark, Green, Eddins, Brummett, and Hutcherson the trust deed made by Roark on the 320 acres. This appeal is prosecuted by Green alone against Newbury, Hutcherson, Roark, Owens, Mrs. Moore, Brummett, and the Bonner Loan & Investment Company.

C. K. Bullard and H. D. Payne, both of Ft. Worth, for appellant. Bonners, of Dallas, D. T. Bomar, of Ft. Worth, O. O. Ross and Cockrell, Gray & Thomas, all of Dallas, Mays & Mays, and Frank R. Graves, all of Ft. Worth, and W. A. Bonner, of Dallas, for appellees.

WILLSON, C. J. (after stating the facts as above). [1-4] As a right to the land or an interest in it could not be predicated on the forged deeds from Eddins to Cummins and Cummins to Hutcherson (Abee v. Bargas, 65 S. W. 489; Blair v. Hennessy, 138 S. W. 1078; Loring v. Jackson, 43 Tex. Civ. App. 306, 95 S. W. 21), it is plain that Green was entitled to relief he sought, unless some of the parties claiming adversely to him had acquired rights superior to his by force of the instrument from Brummett to Arnold, dated January 25, 1912. That instrument purported to convey to Arnold an interest owned by Brummett in the land and in the Eddins notes. As Brummett had previously assigned those notes to Hyde and, by the instrument dated August 19, 1910, had conveyed to him "the contract lien, vendor's lien, rights, equities, and interest" which he as the vendor thereof had in the land, it is clear that the only right he had with reference to either the notes or the land was the right to demand and receive any balance remaining of the proceeds of a sale thereof made to satisfy his note for $4,500 to Hyde, then held by Green. The right to this balance was all that he did or could pass by his assignment to Arnold, and all that Arnold did or could pass to Hutcherson and those who claimed under him. Neither Hutcherson, Roark, Owens, Green, Mrs. Moore nor the Bonner Loan & Investment Company should be heard to assert any other and greater right, unless they were, as to Green, in the attitude of innocent purchasers for value. It is obvious that none of the parties named were in that attitude as to the land, for Brummett's deed to Eddins was of record at the time of the transactions they relied on, and therefore they could not claim to be without notice of the fact that Eddins owned the land, and that Brummett at the most had conveyed, and could convey, to Arnold, under whom they claimed, only such right as he, as the vendor thereof with part of the purchase price unpaid, possessed. That right, on the facts here, was to enforce, as against Eddins and the land, the payment of the remainder of the purchase price represented by the Eddins notes. That right in Brummett passed to Arnold. The parties claiming under the latter doubtless would have had equities superior to the right in Green if the assignment of the notes by Brummett to Arnold had been accompanied by a delivery to him of the possession thereof. In that event, it might be said that Arnold and the parties who had acquired his rights were in the attitude of innocent purchasers of the notes, and entitled to priority as against Green, because of his failure to have the assignment from Brummett to Hyde placed of record. As, however, the notes were never in Arnold's hands, nor in the hands of any of the parties claiming under him, but all the time were in Green's possession, neither Arnold nor those who had acquired his rights could claim to be innocent purchasers thereof. "The possession of commercial paper," said the author of the article on "Bills and Notes" in the American and English Encyclopedia of Law, "is not only the legal evidence of ownership, but it is that evidence required in dealing with it in the ordinary course of business; consequently, where the transferee takes merely an equitable assignment of paper not at the time in the possession of his transferror, he is not entitled to protection as a holder in due course of trade." The conclusion we have

reached is that Green was entitled, as against all the parties who claimed rights adverse to him, to relief he sought, and that the court below erred in refusing him relief. The conclusion to the contrary reached by that court was not, we think, authorized by the rulings made in Drumm Commission Co. v. Core, 47 Tex. Civ. App. 216, 105 S. W. 843; King v. Quincy National Bank, 30 Tex. Civ. App. 92, 69 S. W. 978; Moran v. Wheeler, 87 Tex. 181, 27 S. W. 54; and Loan Association v. Brackett, 91 Tex. 44, 40 S. W. 719, cited in the brief of Newbury, Mrs. Moore, and the Bonner Loan & Investment Company. Each of those cases on its facts is believed to be clearly distinguishable from this one.

The judgment will be reversed and the cause remanded, with instructions to the court below to render judgment in favor of Green against Eddins for the amount unpaid of the four notes made by Eddins to Brummett, foreclosing, as against all the other parties, the vendor's lien reserved in said notes and in the deed from Brummett to Eddins on the land described in Green's petition, but subject to the lien, if asserted, in favor of Newbury for the $647.16, and interest thereon paid by him to the state as the balance of the purchase money due to it on the land, and directing the sale of the land as under execution, and the application of the proceeds to the payment in full of the amount due on the note for $4,500 made by Brummett to Hyde. On the pleadings in the record we are unable to determine how the balance remaining, if any, of such proceeds should be disposed of.

### On Motion for Rehearing.

If it should be conceded that Newbury and those claiming under him had a right to deal with the land, on the theory that the Eddins notes, while owned by Arnold, had been paid in full, as recited in the release to Hutcherson, it would still appear that appellees were not in a position to object to the granting to appellant of the relief he sought; for it appeared that Newbury did not acquire an interest in the land by his purchase from Hutcherson and Roark, because neither of those parties, in fact, owned, nor appeared on the face of the record to own, an interest in same at the time they conveyed it to him. Before Newbury could claim to be in the attitude of an innocent purchaser of the land, it must have appeared that he purchased it from some one he had a right to believe did own it. He not only did not have a right to believe Hutcherson and Roark owned it, but he knew from the face of the record that Eddins owned it. Never having acquired an interest in the land, it was no concern of his that appellant sought to foreclose a lien against it. In the view appellees take of the case, we think they lose sight of the fact that Newbury never acquired, nor in any way connected himself with, the title in Eddins. The case would be different if it appeared that Newbury, relying, and having a right to rely, on the release by Arnold of the vendor's lien, had acquired the Eddins title. He might then be in a position to defeat a foreclosure of the vendor's lien asserted by appellant as the true owner of the Eddins notes.

The motion is overruled.