**CORDELLA et ux. v. COLLIER et al.**[*]
(No. 9439.)

(Court of Civil Appeals of Texas. Dallas. Nov. 21, 1925. Rehearing Denied Jan. 23, 1926.)

1. **Vendor and purchaser** ⊕⟹251—**Where deed forged, vendor's lien notes of no effect against grantor.**

Where deed reserving vendor's lien and making notes transferred to third person a first lien was a forgery, purported obligations created thereby were of no binding effect on grantors.

2. **Vendor and purchaser** ⊕⟹261 (4)—**Vendor's lien notes by forged instrument are of no binding effect, though party purchased in good faith.**

Vendor's lien notes, created under a forged deed, are of no binding effect, though transferee purchased them in good· faith and for value.

3. **Vendor and purchaser** ⊕⟹261 (4)—**Purchaser of notes and deed of trust from vendee, claiming under forged deed, held to acquire no interest.**

Where vendee's claim of title rested on a forged deed, notes and deed of trust by vendee incumbering the property, though transferred to a bona fide purchaser for value, conveyed no interest.

4. **Appeal and error** ⊕⟹931 (4)—**Cancellation of instruments** ⊕⟹53—**Findings. held to show transfer of notes forged; no presumption of finding permissible.**

In action to cancel a deed and vendor's lien notes, findings that transfer of lien was forged, and that purchase-money notes were never delivered to vendor, were equivalent to finding that vendor's purported indorsement of notes was forged, and no presumption· of contrary finding by court could be indulged.

5. **Vendor and purchaser** ⊕⟹261 (4)—**Bona fide purchaser of purchase-money notes entitled to recover money paid on cancellation of deed.**

Where vendee under forged deed sold purchase-money notes to a bona fide purchaser, on cancellation of the deed the bona fide purchaser is entitled to recover from vendor amount paid to vendor by vendee and judgment for balance of notes against vendee.

.      On· Motion for Rehearing.

6. **Homestead** ⊕⟹90—**Bona fide purchaser of purchase-money notes not entitled to lien on homestead for money received by vendor on cancellation of deed for forgery.**

Where vendee under a forged deed sold purchase-money notes to a bona fide purchaser, on· cancellation of the deed the bona fide purchaser is not entitled to a lien against· the property for amount of money turned over to vendor by vendee from sale of notes where the property was a homestead.

Appeal from District Court, Dauers County; Towne Young, Judge.

Suit by Sam Cordella and wife against H. L. Collier and others. From the judgment, plaintiffs appeal. Reversed and rendered in part, and affirmed in part.

Rosser Thomas, of Dallas, for appellants. Cockrell, McBride, O'Donnell & Hamilton, of Dallas, for appellees.

JONES, C. J. Appellants, Sam Cordella and his wife, Tarafine Cordella, brought this . suit in the district court of Dallas county against D. S. Harris, appellee, and H. L. Collier and R. H. Pitts; the latter two not being parties to this appeal. The relief sought by appellants against Collier and Pitts by· this suit was the cancellation of a deed of conveyance of a house and lot located in the city of Dallas, purported to have been executed by appellants to the said .Collier, an alleged partner of Pitts; the said deed reciting a consideration of $6,500, of which $900 was cash, the balance of $5,600 to be evidenced by the execution by Collier to Sam Cordella, as payee, of 14 vendor's lien notes, as follows: Four notes carrying a first and superior lien, three being for the sum of $250 each, and the fourth being for $1,250; the remaining ten notes, amounting in the aggregate to $3,600, eight for the sum of $400 each, and the other two aggregating $400, each carrying a second and inferior

lien on the land. The notes were fully described in said deed of conveyance. This deed bears date of February 20, 1922, and purports to have been signed by appellants by their mark, and acknowledged by each on said date before W. R. Bryant, a notary public of Dallas county, Tex. The notes above mentioned also bear the date of February 20, 1922. The deed was recorded in the deed records of Dallas county March 17, 1922. The grounds for the said relief against these parties, as disclosed by allegations in their pleadings, are: (1) That appellants never executed such a conveyance of their said land to the said Collier, and that said purported deed is a forgery. (2) In the alternative, if they did execute such conveyance, it was procured by false and fraudulent representations made to them by said parties and said Bryant as to the amount of the consideration, the execution and delivery to them of said four first lien notes, and the making of the remaining notes second lien notes on the said land; that they were foreigners and could not read the English language, and were thereby compelled to take the representation of Pitts and Collier, and of the notary public, W. R. Bryant, as to the contents of said deed; that it was represented to each of them that the deed they executed contained a consideration of $4,500, $900 cash and the remaining $3,600 in nine vendor's lien notes of $400 each, all of which were to be secured by a first vendor's lien on the land, and that, had not such representation been made in such manner as caused them to rely thereon, they would not have executed any deed, and that by reason thereof such deed was void.

At the time of the filing of this suit, and at the time of its trial, appellee Harris was in possession of the said four notes that are made a first lien on the land, and claimed to be the legal owner of said notes and the lien securing them, by virtue of a duly executed transfer of said notes and lien by appellant Sam Cordella, the payee, and by virtue of a blank indorsement of said notes by said appellant, his name being signed on each of same by mark. The acknowledgment of said appellant to this transfer purports to have been taken before the said W. R. Bryant, and the transfer itself, together with the acknowledgment, bears date of February 20, 1922.

The relief appellants sought against appellee was a cancellation of each of the said four notes, together with all liens securing them, also the cancellation of a deed of trust lien placed by Collier and wife on the said land on said day for the benefit of appellee as a further security for said four notes. The grounds for such relief as alleged in appellants' pleading were in general the same as the grounds for the relief against Collier and Pitts, as above stated, with the additional allegation as to the forgery of the transfer of lien and the indorsement on the said notes, and, where fraud and misrepresentation are charged as a ground for relief, appropriate allegations as to appellee's notice of this fraud are made.

Appellants' pleading admits the entering into of a contract with said Pitts, as agent, to sell this said land, and that said contract authorized him to find a purchaser for the land at a consideration of $4,500, $900 cash and $3,600 by the execution of nine vendor's lien notes of $400 each, maturing at stated times. Said pleading also admits that the said Collier was secured as a purchaser on such terms, and that a written contract of sale was executed by appellants and Collier embodying these terms; also that a deed in accordance with the terms of said contract of sale was executed by appellants, Sam Cordella signing his name thereto, and appellant Tarafine Cordella signing by her mark; that said deed was duly acknowledged before the said W. R. Bryant as notary public; and that said Bryant, said Pitts, and said Collier each represented that these were the terms of the deed they executed, and that the cash payment of $900 was made and the said nine notes were executed by Collier and delivered to appellant Cordella, the payee named in said notes. They ask in their pleading that the said Collier be required to produce said deed at the trial of the case.

Appellee, by appropriate pleading, showed his ownership of the said four notes by virtue of their indorsement and by virtue of the transfer above stated, and alleged the genuineness of the deed, the notes, their indorsement, and the transfer of lien, and the validity of the said conveyance under which the said notes came into existence; and, by appropriate pleading, alleged that, as against appellants' alternate plea of fraud and misrepresentation, he was an innocent purchaser of the said notes, paying full value therefor. The other said parties to the suit answered by denying specifically all allegations of forgery and fraud.

Early in the pendency of this suit, at the instance of appellants, the court appointed a receiver to take charge of the property and collect its rents and make full report at the trial of the case of his receivership. This was done, and the judgment entered discharged the receivership and made disposition of the proceeds of the rent, about which no complaint is here made.

It appears from the evidence that neither of appellants was present during the negotiations with appellee for the purchase of the said four notes or at the time the said notes were delivered to appellee and appellee's check for the purchase price was delivered. It further appears that appellee had delivered to his attorney a check payable to him for the amount of the purchase price when he should approve the papers evidencing his ownership of the aforesaid notes, and that

the attorney in turn gave his check to Collier, who purported to represent appellants in this transaction. While all the instruments evidencing the conveyance, the notes, and the transfer of the said four notes, are of date February 20, 1922, the transaction was actually had on March 1, 1922; that the first deed shown to the attorney for appellee was not satisfactory to him and he had another deed drawn, but caused it to bear the same date as the other deed. This attorney did not come in contact with appellants at any time during these proceedings, but acted on the belief that Pitts or Pitts and Collier were representing them in the matter. Appellants were paid $900 at this time as the cash payment in the conveyance they claimed they actually made, and they did not receive it as the cash payment of the conveyance contended by appellee to have been made. It also appears that this $900 was a part of the $2,000 received from appellee as the purchase price of said four notes, and that the remaining $1,100 was retained by the said Collier, and is still retained by him.

A written contract of sale of this land by appellants to Collier, purporting to have been executed by said parties, was introduced in evidence, and, as to the consideration and terms of the sale, was in accord with the contract of sale alleged by appellants to have been executed, except there is a clause appearing near the end of the contract which modifies the consideration as first given therein to the extent that the nine notes for $400 each are made a second lien and subordinate to the right of the purchaser to incumber said property for an indebtedness in his favor of $2,000, and secure said indebtedness by a first lien on the property. This contract bore the signature of Sam Cordella and the signature by mark of Tarafine Cordella; the latter being witnessed. Appellants offered proof tending to establish the fact that this modifying clause was not a part of the contract at the time it was executed, and the jury so found. The deed of conveyance first submitted to appellee's attorney for approval appears to have followed the terms of this forged contract of sale. This deed was rejected by said attorney, for the reason that the $2,000 indebtedness against the land was not evidenced by notes that carried the vendor's lien. Collier then submitted the deed in evidence, which was approved, and the sale consummated as to the said notes.

The case was tried before a jury and submitted on special issues. After the jury had returned the verdict, both appellants and appellee filed motion for judgment, and appellee likewise filed a motion to set aside all findings that appeared to be unfavorable to him. The court overruled appellants' motion for judgment, on which ruling error is duly assigned. The court also overruled appellee's motion to set aside the said findings of

the jury, but granted his motion for judgment. Error on this ruling of the court is duly assigned by appellants.

The judgment entered by the court canceled the deed of conveyance, and vested appellants with title to their property, gave judgment in favor of appellants against Collier and Pitts in the sum of $1,100, validated the four notes in the aggregate sum of $2,000 held by appellee, and decreed the deed of trust executed by Collier and wife for appellee's benefit as creating a valid and subsisting lien against the property. The judgment contained other provisions in reference to the receiver and the disposition of the rents that are not involved on this appeal.

Appellants, by assignments of error and appropriate propositions of law, have duly raised the issues herein discussed; the controlling question being whether, on the refusal to set aside the findings of the jury, it became the duty of the court to enter judgment in favor of appellants canceling appellee's notes and lien on this property. The findings of the jury are as follows:

"No. 1. Did the plaintiffs make a contract with the defendant Collier to sell him their property on San Jacinto street for $4,500; $900 to be paid in cash, the balance to be represented by notes for the sum of $400 each, payable at intervals of six months, with interest at 8 per cent. per annum? Answer: Yes.

"No. 2. Was a deed prepared and executed by the plaintiffs to the defendant Collier conveying him their property at said sum, and signed and acknowledged and delivered to Pitts or any other person for Collier? Answer: Yes.

"No. 3. Did the contract of date February 13, 1922, executed by Sam Cordella and wife, Tarafine Cordella, contain the clause: 'It is agreed that the above said notes are second lien notes and that a first lien note not to exceed $2,000 will be placed on the property by the purchaser; $225 note superior to second lien and inferior to first lien will be made and subtracted from the $3,600 note. Commission note will be made payable $50 per month with interest at the rate of 8 per cent.,' when it was executed by them? Answer 'Yes' or 'No.' Answer: No.

"No. 4. Did W. R. Bryant, in the presence of Sam Cordella, sign Sam Cordella's name to the deed dated February 20, 1922, and introduced in evidence, and did the said Sam Cordella authorize and sanction the act of the said Bryant in doing so? Answer: No.

"No. 5. Did W. R. Bryant, in the presence of Tarafine Cordella, sign Tarafine Cordella's name to the deed dated February 20, 1922, and introduced in evidence, and did the said Tarafine Cordella authorize and sanction the act of the said Bryant in doing so? Answer: No.

"No. 6. Did Sam Cordella and his wife, Tarafine Cordella, acknowledge the deed dated February 20, 1922, and introduced in evidence, before W. R. Bryant, a notary public? Answer: No.

"No. 7. Did W. R. Bryant sign the name of Sam Cordella to the transfer of lien to Dr. Harris, dated February 20, 1922, and introduced in evidence, and did the said Sam Cordel-

la authorize or sanction the act of the said Bryant in so doing? Answer: No.

"No. 8. Did Sam Cordella acknowledge the transfer of the lien dated February 20, 1922, and introduced in evidence, before W. R. Bryant, a notary public? Answer: No.

"No. 9. Did L. C. McBride, acting for D. S. Harris, in taking the notes and paying the money, act upon the faith of the deed dated February 20, 1922, introduced in evidence, and the certificate of the notary on said deed? Answer: Yes.

"No. 10. Did L. C. McBride, acting for D. S. Harris, in taking the notes and paying the money, act upon the faith of the transfer of lien introduced in evidence, and the notary's certificate thereto? Answer 'Yes' or 'No.' Answer: Yes.

"No. 11. Were four notes, aggregating the sum of $2,000, executed by the defendant Collier, and secured by a first lien on said property, ever delivered to the plaintiff Sam Cordella? Answer: No.

"No. 12. Did the defendant Harris ever pay the plaintiff Sam Cordella anything for said transfer? Answer: No.

"No. 13. Did the plaintiff Sam Cordella ever authorize the defendant Collier to deliver any transfer of said notes to the defendant Harris, and did he authorize the said Collier to collect the consideration for said transfer from said defendant Harris? Answer: No."

"No. 18. Did plaintiffs understand and agree that they were to give Collier the $2,000 in first lien notes, or the proceeds from the sale of same? Answer: No.

"No. 19. Did Collier secure the $2,000 in first lien notes, or the money for the sale of same, by fraudulent representations employed against plaintiffs by either Collier, Pitts, or Bryant? Answer: Yes."

[1, 2] These findings are all supported by evidence, and are adopted by this court as its findings of fact on the matters to which they relate. They establish the fact that appellee's claim of interest in this land and claim of obligation of appellants to pay the notes held by him, and to discharge the lien securing same, rest solely on forged instruments. It necessarily follows that the purported obligations created by the forged instruments are of no binding effect on appellants. This is true, notwithstanding the fact that appellee and his attorney acted throughout in perfect good faith; for a forged deed is absolutely void, and, even in the hands of a person claiming in good faith thereunder, is entirely inoperative, either to divest the purported grantor's title or to vest any right it may have attempted to create or any title in the grantee or the claimant. 8 R. C. L. 1029; Green v. Eddins (Tex. Civ. App.) 167 S. W. 196; Abee v. Bargas (Tex. Civ. App.) 65 S. W. 489; Loring v. Jackson, 43 Tex. Civ. App. 306, 95 S. W. 19.

[3, 4] Appellee contends that, as appellants admitted the execution of a deed of conveyance of the land to Collier, and that, as the title to the property thereby vested in Collier, he had the legal right to incumber it with the deed of trust executed by him to secure the $2,000. We cannot agree to this contention, because the record shows that Collier never accepted this deed nor claimed under it, but based his claim entirely on the forged deed and the provisions therein contained, and that appellee likewise based his defense on the validity of the forged instruments. The power to acquire the claim of ownership to these notes, and the right to assert a lien against the land for their payment, rest entirely in this forged deed. It alone authorized and caused to be brought into existence the obligations against appellants and their land asserted by appellee. When the deed falls, the rights of appellee necessarily fall with it. While the jury was not required to find specifically whether the said notes and the indorsement on each was a forgery, yet their findings that the deed was forged, that the transfer of lien was forged, and that the notes were never delivered to appellant Sam Cordella, are tantamount to a finding that these notes were also forged, and this court cannot indulge the presumption that the trial court found otherwise.

The only judgment that could have been entered by the trial court on the findings of the jury is a judgment pronouncing the invalidity of the four said notes, the transfer of lien, and the said deed of trust, and the cancellation of the indebtedness of $2,000, the four notes evidencing same, and the vendor's lien and deed of trust lien securing payment thereof.

[5] Appellants received $900 from the $2,000 paid by appellee to Collier for the purchase of these notes. In their pleadings, appellants tendered said $900 into court for the purpose that the court might adjudge said sum to the party entitled thereto. This $900 should have been adjudged to appellee. Likewise, the judgment entered by the trial court in favor of appellants against Pitts and Collier for $1,100, being the remainder of the said $2,000, should not have been given appellants, but to appellee. It therefore follows that the portion of the judgment of the trial court in the particulars above discussed should be reversed and here rendered as follows: The four notes for the principal sum of $2,000 described in the judgment of the lower court, and the indebtedness they evidence, should be, and the same are hereby, canceled and held for naught. The deed of trust executed by Collier and wife in favor of appellee D. S. Harris of date February 20, 1922, should be, and the same is hereby, canceled and held for naught. It is further ordered that appellee D. S. Harris have judgment against appellant Sam Cordella in the sum of $900, together with interest at the rate of 6 per cent. per annum from this date; that appellee D. S. Harris should be, and he hereby is, subrogated to the rights of appellants, Sam Cordella and Tarafine Cordella, in the judgment for $1,100, rendered

in favor of said appellants against H. L. Collier and R. H. Pitts, and said Sam Cordella and Tarafine Cordella are hereby divested of all rights in and to said sum of $1,100, and all rights given by the judgment of the trial court in and to said sum of money in favor of said Sam Cordella and Tarafine Cordella are hereby vested in appellee D. S. Harris. In all other respects the judgment of the trial court is affirmed.

Reversed and rendered in part, and affirmed in part.

### On Motion for Rehearing.

Appellees have filed in this case a motion for additional findings of fact and also a motion for rehearing, which motions will be considered in the order named.

It appears that in the original opinion there was a failure to include in the statement of appellee Harris' pleading that same contained an allegation to the effect that, immediately after the notes executed by H. L. Collier in favor of Sam Cordella were delivered to Harris, H. L. Collier and wife, Estelle M. Collier, executed to L. C. McBride, trustee, their deed of trust covering the property in controversy and securing the payment of the series of notes purchased by Harris. This fact was fully pleaded by said appellees. This deed of trust was duly acknowledged on the 13th day of March, 1922, by Collier and wife, and duly delivered to appellee Harris.

The original opinion contains the statement that "the first deed shown to the attorney for appellees was not satisfactory to him, and he had another drawn but caused to bear the same date." This statement in the opinion might be understood as referring to an executed deed, whereas the facts show that it was merely a draft of a deed embracing the provisions as stated in the original opinion. The motion for additional findings in other respects is overruled.

[6] In the motion for rehearing, appellee Harris renews all the contentions heretofore made, and, in addition thereto, urgently insists that, if this court adheres to its original opinion, it should declare a lien against appellants' land to secure the payment of the $900 adjudged against appellant and in favor of appellee. This contention is based upon the fact that it appears from the evidence that the $900 down payment received by appellant on his supposed sale of his land to Collier was a part of the $2,000 paid by said appellee to Collier for appellant as the purchase price of the forged notes. The undisputed evidence showed that appellants' land was their homestead, and it remained their homestead, notwithstanding the forged deed under which said appellee, without any knowledge of the forgery, acquired the notes. No interest in the land passed by the forged deed or the forged notes. It is true that the jury found that appellant, on very different terms to those embraced in the forged deed, had executed a deed to Collier. The record is clear, however, that Collier never accepted this deed, nor acted under it, but, on the contrary, voluntarily chose to reject this deed and claim under the forged deed. There was no money paid under the genuine deed to appellant, but, on the contrary, the money to make the payment to appellant was secured under the forged deed and actually paid as a consideration for said deed. While appellants should return the money, and this court has given judgment in favor of appellee against appellant for this money, yet this court cannot decree a lien against land used as the homestead of appellants' family, against whose ownership the forged deed passed no title, and which land has never been divested of its homestead character.

The motion for rehearing is overruled.